[No. H030596. Sixth Dist. Jan. 11, 2008.]

KEITH ROYBAL et al., Plaintiffs and Respondents, v.
GOVERNING BOARD OF THE SALINAS CITY ELEMENTARY
SCHOOL DISTRICT et al., Defendants and Appellants.

1144

COUNSEL

Breon, Schaeffer & Bryant, Keith V. Breon, George W. Schaeffer, Jr., and Angela C. Karchmer for Defendants and Appellants.

Welsh & Schmidt and Michelle A. Welsh for Plaintiffs and Respondents.

OPINION

**ELIA, J.**—The Salinas City Elementary School District, its superintendent, and its governing board (collectively, the District) seek review of an order requiring them to pay attorney fees under Code of Civil Procedure section 1021.5 based on the District's improper layoff of three District employees, the successful petitioners in the underlying mandamus proceeding.[1] On

---

[1] Although the three employees are the respondents on appeal, for clarity we will refer to them as petitioners, the role they assumed in the proceedings below.

appeal, the District contends that no reasonable basis exists for recovery of attorney fees under this statute. We agree that the fee award is not supported by the record or the purposes and policies of the "private attorney general" doctrine. Accordingly, we will modify the judgment to delete these fees from the amount awarded to petitioners.

## Background

Petitioners are three school psychologists who were employed by the District. In early 2005, in the face of decreasing student attendance and a revenue shortfall, the governing board of the District adopted a resolution reducing certain services and terminating the employment of certain certificated employees. The superintendent thereafter sent a "Notice of Layoff" to 134 full-time certificated employees, including petitioners, pursuant to Education Code section 44949.

Petitioners requested a hearing, which took place in April 2005 before an administrative law judge (ALJ) pursuant to Education Code section 44949, subdivision (c)(3). Petitioners contended that the layoff was procedurally defective and that the District had improperly deviated from the seniority list "to retain certain psychologists with advanced Spanish [l]anguage proficiency skills." The ALJ, however, rejected petitioners' arguments, finding insufficient evidence that they were more skilled in the Spanish language than the psychologists the District had decided to retain. The governing board adopted the proposed decision of the ALJ, effective June 30, 2005.

Petitioners then sought a peremptory writ of mandate in superior court. In their amended petition they challenged the ALJ's decision with respect to several points, including the finding that they lacked sufficient Spanish language skills to allow the District to lay them off before less senior psychologists.

The superior court agreed with petitioners that the District had improperly deviated from seniority order in implementing the layoff. Petitioners, the court found, were all bilingual. The District thus had "failed to demonstrate that the Petitioners did not have the necessary bilingual skills. Furthermore, [the District] failed to produce evidence that there exis[t] any objective criteria for determining language skill levels for school psychologists, such as Petitioners." The court directed the District not only to set aside the ALJ's decision and reinstate petitioners, but also to pay them "damages for past and future lost wages, the value of lost benefits, and other damages pursuant to Code of Civil Procedure [section] 1095" as well as costs and attorney fees.

In the ensuing motion for damages and attorney fees, petitioners asserted that they were entitled to attorney fees under Education Code section 44944

and under Code of Civil Procedure section 1021.5.[2] Addressing the latter statute, petitioners asserted that "whenever particular school employees enforce the specific provisions of the Education Code and force the District to comply with that, it benefits every school employee in the state whom [*sic*] is entitled to that protection. So it is a very large group of people." Petitioners further argued that the financial burden of the litigation was out of proportion to the damages they were asserting. In response, the District maintained that petitioners had not satisfied all the prerequisites for recovery of attorney fees under section 1021.5, particularly the necessity and burden of private enforcement in relation to petitioners' individual interests in the litigation.

After considering the written and oral arguments of the parties, the superior court ruled that petitioners were not entitled to attorney fees under the Education Code statutes pertaining to layoff, particularly sections 44955 and 44959. They did, however, meet the requirements for such fees under Code of Civil Procedure section 1021.5. Accordingly, on May 26, 2006, the court entered judgment awarding damages to two of the petitioners and costs and attorney fees to all three.

## *Discussion*

Code of Civil Procedure section 1021.5 permits an award of attorney fees to a successful party in an action that "has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

The statute, a codification of the "private attorney general" doctrine, recognizes that "privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200] (*Woodland Hills*); see also *Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 690 [98 Cal.Rptr.2d 263] [private attorney general doctrine is designed to "encourage private enforcement of important public rights and to ensure aggrieved citizens have access to the judicial process where

---

[2] All further unspecified statutory references are to the Education Code with the exception of "section 1021.5," which refers to the Code of Civil Procedure.

statutory or constitutional rights have been violated"].) Accordingly, "private attorney general" fees may be awarded when the plaintiff's action "(1) served to vindicate an important public right; (2) conferred a significant benefit on the general public or a large class of persons; and (3) imposed a financial burden on plaintiffs which was out of proportion to their individual stake in the matter." (*Baggett v. Gates* (1982) 32 Cal.3d 128, 142 [185 Cal.Rptr. 232, 649 P.2d 874]; see *Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 318 [193 Cal.Rptr. 900, 667 P.2d 704].)

Trial court decisions on attorney fee requests under Code of Civil Procedure section 1021.5 have traditionally been reviewed deferentially and upheld absent a prejudicial abuse of discretion. (See, e.g., *Baggett v. Gates, supra,* 32 Cal.3d at pp. 142–143; *Galante Vineyards v. Monterey Peninsula Water Management Dist.* (1997) 60 Cal.App.4th 1109, 1125 [71 Cal.Rptr.2d 1].) Our Supreme Court recently clarified, however, that the proper standard of review depends on the extent to which there were issues of fact below. If the issue is whether the criteria for an award of attorney fees and costs in this context have been satisfied, "this may be a mixed question of law and fact and, if factual questions predominate, may warrant a deferential standard of review." (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175 [39 Cal.Rptr.3d 788, 129 P.3d 1].) If, on the other hand, the underlying facts are largely undisputed and the issue calls for statutory construction, it is a question of law that is reviewed de novo. (*Id.* at pp. 1175–1176.)

The application of Code of Civil Procedure section 1021.5 in this case involves mixed questions of law and fact. But even giving all possible deference to the superior court's exercise of discretion and drawing reasonable inferences in favor of its ruling, we cannot uphold the judgment.

### 1. *Important Right*

█ The first prong of the Code of Civil Procedure section 1021.5 test for "private attorney general" fees requires a determination of "the 'strength' or 'societal importance' of the right involved." (*Woodland Hills, supra,* 23 Cal.3d at p. 935.) That right may be constitutional or statutory, but it must be " 'an important right affecting the public interest' " (*ibid.*)—it "cannot involve trivial or peripheral public policies." (*Ryan v. California Interscholastic Federation* (2001) 94 Cal.App.4th 1033, 1044 [114 Cal.Rptr.2d 787].) Where, as here, the right vindicated is conferred by statute, "courts should generally realistically assess the significance of that right in terms of its relationship to the achievement of fundamental legislative goals." (*Woodland Hills, supra,* 23 Cal.3d at p. 936.)

Here petitioners claimed attorney fees based on their having been "forced to litigate their statutory right under Education Code § 44955 to be laid off

only in seniority order, and in accordance with the law as defined by the Court in *Alexander v. Board of Trustees of Delano Joint Union School District* (1983) 139 Cal.App.3d 567 [188 Cal.Rptr. 705], thereby benefitting all school psychologists and other certificated employees, including all school teachers, by vindicating an important right affecting the public interest in uniform and fair administration of public schools." On appeal, petitioners do not repeat that circular statement and mention *Alexander* only in describing the requirements of section 44955. Instead, petitioners turn to the trial court's order, which stated that "[t]he legal work [of petitioners' attorneys] was of high quality and the issue litigated was important both as to its impact on other parties and in reaffirming the basic requirement that [the District] provide due process during layoff proceedings." This reasoning, however, was offered as the basis for setting the rates at which the attorneys would be compensated; it was not a finding of "an important right affecting the public interest" within the meaning of Code of Civil Procedure section 1021.5. As to the justification of the award in the first place, the court merely stated that petitioners had "established the requisite elements of *Press v. Lucky Stores, Inc.*[, *supra*,] 34 Cal.3d 311, 318." The writ of mandate itself appears to have been based not on a due process violation but on a failure of proof: the District had "failed to demonstrate that the Petitioners did not have the necessary bilingual skills" to support the District's deviation from seniority order.[3] Even the writ petition was based almost entirely on the lack of evidence to support the ALJ's decision. At best, it could be inferred that petitioners' victory revealed the deficiencies in the District's layoff procedure *on this occasion*, inasmuch as petitioners' language proficiency was assessed in a way that made it impossible for them to defend themselves. The remediation of that defect did not amount to enforcement of an important *public* right.

2. *Significant Benefit*

Even assuming petitioners obtained enforcement of an important right to be laid off only in accordance with section 44955, we cannot agree that a substantial benefit inured to the public or a large class of District employees. Petitioners suggest that a significant benefit was conferred on all 134 employees who received layoff notices. "These employees directly benefitted from the Petitioners/Respondents' successful efforts to ensure that the District complied with the requirements of due process and the California Education Code." The writ of mandate, however, benefited only petitioners; other employees were not named in the order, nor was the language issue relevant to the other employees' complaints.

---

[3] The trial court initially remanded the matter to allow the District to produce evidence that it had "valid, measurable" criteria for determining language skill levels and that it had assessed petitioners' skills by those criteria. But upon reconsideration, the court modified its order to eliminate the remand.

██ Petitioners also suggest that they "have furthered the rights of all teachers and school psychologists serving throughout the State of California, and also protected the public interest in academic freedom which is the foundation of California's tenure system." This sweeping statement is unconvincing. Petitioners secured a ruling that the District's deviation from seniority order was improper because petitioners were bilingual and thus met the District's Spanish proficiency criterion for retention. Two of the petitioners also obtained damages. There is no evidence supporting the inference that the ruling could benefit any other employees. "Of course, the public always has a significant interest in seeing that legal strictures are properly enforced and thus, in a real sense, the public always derives a 'benefit' when illegal private or public conduct is rectified. Both the statutory language (*'significant benefit'*) and prior case law, however, indicate that the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation." (*Woodland Hills, supra*, 23 Cal.3d at p. 939.) Rather, the significance of the benefit achieved by the successful party must be determined "from a realistic assessment, in light of all the pertinent circumstances, of the gains [that] have resulted in a particular case." (*Id.* at p. 940; see *Family Planning Specialists Medical Group, Inc. v. Powers* (1995) 39 Cal.App.4th 1561, 1568–1569 [46 Cal.Rptr.2d 667].)

Realistically assessed, the gains achieved by petitioners were personal. The writ of mandate did not vindicate the rights of "all teachers and school psychologists serving throughout the State of California" or even the other District employees who were sent layoff notices at the same time. Any benefit to the public in the District's compliance with section 44955 in this case was incidental to the primary goal of the lawsuit, to obtain reinstatement and/or damages for petitioners. (Cf. *Bell v. Vista Unified School Dist., supra*, 82 Cal.App.4th at p. 691 [even if significant public benefit resulted, primary focus was wrongful termination and quest for damages].)

The inadequacy of petitioners' showing on this element distinguishes their situation from that of *Press v. Lucky Stores, Inc., supra*, 34 Cal.3d 311, which the trial court cited in support of its decision to award fees to petitioners. In *Press* the plaintiffs successfully challenged a supermarket's denial of access to the premises when they attempted to gather signatures for a petition. The Supreme Court held that in addition to enforcing the fundamental First Amendment right of free expression and petition, the litigation, in which the plaintiffs had "no personal pecuniary interest," necessarily conferred a significant benefit on society as a whole, and certainly on a large class of persons attempting to gain access to shopping centers throughout the state. (34 Cal.3d at p. 320, fn. 7.) Here, by contrast, the paramount purpose and effect of the litigation were to set aside the governing board's decision to terminate petitioners' employment and obtain damages. Under these circumstances,

where the litigation primarily advanced petitioners' personal economic interests, we cannot find a reasonable basis for the conclusion that a significant benefit was conferred on the public or a large class of persons.

### 3. Necessity and Financial Burden

■ Although the insufficiency of the "significant benefit" requirement alone defeats the claim for Code of Civil Procedure section 1021.5 fees, we briefly comment on the third prong of the "private attorney general" test as it applies here. This element is met if the cost of the claimant's legal victory transcends his personal interest—that is, when the burden of the litigation was disproportionate to the plaintiff's individual stake in the matter. (*Woodland Hills, supra*, 23 Cal.3d at p. 941; *Bell v. Vista Unified School Dist., supra*, 82 Cal.App.4th at p. 691.) Again *Press* does not help petitioners; in that case, as noted earlier, the plaintiffs had *no* pecuniary interest in the outcome of the litigation. (*Press v. Lucky Stores, Inc., supra*, 34 Cal.3d at p. 321.) "Section 1021.5 was not designed as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest." (*Beach Colony II v. California Coastal Com.* (1985) 166 Cal.App.3d 106, 114 [212 Cal.Rptr. 485]; see *Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331 [39 Cal.Rptr.3d 550]; see also *People ex rel. Brown v. Tehama County Bd. of Supervisors* (2007) 149 Cal.App.4th 422, 454 [56 Cal.Rptr. 3d 558, 582] [Code Civ. Proc., § 1021.5 attorney fees serve " 'as a "bounty" for pursuing public interest litigation, not a reward for litigants motivated by their own interests who coincidentally serve the public' "].) Thus, "[i]f the enforcement of the public interest is merely 'coincidental to the attainment of . . . personal goals' [citation] or is 'self-serving' [citation], then this requirement is not met." (*California Common Cause v. Duffy* (1987) 200 Cal.App.3d 730, 750–751 [246 Cal.Rptr. 285]; accord, *Bowman v. City of Berkeley* (2005) 131 Cal.App.4th 173, 181 [31 Cal.Rptr.3d 447].)

Petitioners point out that the damages they received were exceeded by the attorney fees they incurred in pursuing the matter. But the ratio of dollars recovered to dollars spent is not the sole measure of the necessity and financial burden of the litigation. On the contrary, there may be "nonfinancial personal interests of sufficient strength and specificity to prompt an individual to pursue vigorously a suit notwithstanding a substantial financial burden in doing so." (*Families Unafraid to Uphold Rural El Dorado County v. Board of Supervisors* (2000) 79 Cal.App.4th 505, 514 [94 Cal.Rptr.2d 205]; see also *Bowman v. City of Berkeley, supra*, 131 Cal.App.4th at p. 181 [personal stake may consist of aesthetic, environmental, property, or other concrete, nonfinancial interests].) Because the financial burden of the litigation did not

transcend petitioners' personal interest in obtaining reinstatement and damages, attorney fees were not warranted under Code of Civil Procedure section 1021.5.

### 4. *Attorney Fees Under Section 44944*

Petitioners maintain that even if attorney fees were not available under Code of Civil Procedure section 1021.5, the error was not prejudicial because they were nonetheless authorized under Education Code section 44944. As they did below, petitioners rely on *Forker v. Board of Trustees* (1984) 160 Cal.App.3d 13 [206 Cal.Rptr. 303]. Petitioners depict the facts of that case as if they were similar to those presented here, an improper layoff. The facts are not similar, however. Forker was a school librarian whose termination was purportedly based on a reduction in librarian services. Only months later, the school district reestablished the services but refused to rehire Forker because of her incompetence going back four years. The superior court properly found that the board had abused its discretion by refusing Forker's request for an evidentiary hearing, and it awarded her attorney fees under section 44944, subdivision (e). In affirming, the appellate court made it clear that this was not simply a layoff; the board had, in effect, dismissed Forker for cause under Education Code section 44932 without following the mandatory procedures set forth in Education Code sections 44938 and 44944. As the prevailing party Forker was therefore entitled to attorney fees under section 44944, subdivision (e).

The superior court correctly found *Forker* and section 44944 inapposite here. This was not a "dismissal or suspension proceeding initiated pursuant to Section 44934," heard by a commission on professional competence. (§ 44944, subds. (a)(1), (b).) Because attorney fees were not authorized for layoffs initiated under section 44955, the superior court properly declined to follow *Forker* and award fees to petitioners on this ground.

### Conclusion

■ On the record before us, we can find no evidence in the record to support the finding that petitioners were entitled to "private attorney general" attorney fees and no other statutory authority for those fees. As there is no reasonable basis for an award of attorney fees under Code of Civil Procedure section 1021.5, we must conclude that the superior court's order was outside the scope of its discretion when considered in light of the purposes and policy of the statute.

## Disposition

The judgment is modified to strike the order awarding attorney fees to petitioners under Code of Civil Procedure section 1021.5. In all other respects the judgment is affirmed. The parties shall bear their own costs on appeal.

Rushing, P. J., and Premo, J., concurred.