Filed 8/21/15  Contra Costa County Deputy Dist. Attorneys' Assn. v. County of Contra Costa, HR Dept. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CONTRA COSTA COUNTY DEPUTY DISTRICT ATTORNEYS' ASSOCIATION, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF CONTRA COSTA, HUMAN RESOURCES DEPARTMENT, <br><br> Defendant and Respondent. | A140669 <br><br> (Contra Costa County <br> Super. Ct. No. MSN 12-0315) |

This is an appeal from an order denying the motion for attorney fees brought by appellant Contra Costa County Deputy District Attorneys' Association.  Appellant brought this motion pursuant to Code of Civil Procedure section 1021.5 after prevailing against respondent County of Contra Costa Human Resources Department (County) in a challenge to the County's hiring of a particular deputy district attorney.  For reasons set forth below, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On February 28, 2012, appellant filed a petition for writ of mandate (petition) alleging the County had violated its mandatory duty to employ deputy district attorneys in accordance with its personnel management regulations (PMRs).  The PMRs were adopted in 1982 by the County's Board of Supervisors and are binding on the County with respect to personnel matters.  According to the petition, the County violated PMR 601 and PMR 608 when, in early 2012, it hired Laura Delehunt as Deputy District

1

Attorney-Basic Level.[1] PMR 601 provides that the "Director of Human Resources shall establish and maintain employment lists" of eligible candidates for particular job classifications.[2] PMR 608, in turn, requires the County to continue in effect an employment list established by the County's Director of Human Resources (Director) for a period of no less than six months and no more than two years from the date the list is promulgated, except that upon the request of the appointing authority, the Director may continue a list for up to one additional year or until a new list is promulgated for the class. According to the petition, the County improperly hired Delehunt from an employment list promulgated in 2008 (2008 List) that had expired by the time of her 2012 hiring by operation of PMR 608, rendering the County's action improper.[3] Based upon this alleged violation of PMR 608, appellant sought the writ of mandate to compel the County "to cease and desist in the hiring of any potential employees listed on the expired 2008 employment list, and hereafter follow the hiring mandates of the PMR."

On April 27, 2012, the County answered the petition. In doing so, the County admitted, among other things, that Delehunt was on the 2008 List and was not on any

---

[1]    There are three classifications of deputy district attorney: fixed term, basic and advanced. The fixed-term classification is the entry level position where the attorney is hired for a 36-month term, after which the employment terminates unless the attorney is hired at the basic level. The basic-level classification is, in turn, a permanent employment position.

[2]    Pursuant to PMR 605, the Director is authorized to conduct a promotional exam to evaluate employees desiring to be considered for a promotional opportunity. Based upon the results of this exam, the Director may then prepare an employment list in order to hire an employee for the opportunity. Alternatively, PMR 503 authorizes the Director to promote certain employees working in "flexibly staffed classification[s]" without taking a competitive exam. In these cases, the appointing authority (e.g., a department head) determines based upon its own criteria and without preparation of an employment list whether to recommend a particular employee to the Director for promotion. There is no allegation in this case that Delehunt was promoted to deputy district attorney, basic level, pursuant to PMR 503. Rather, she was hired from the 2008 List.

[3]    Cancellation or expiration of an employment list is also governed by PMR 608.1, which provides: "Lists or any remaining portions of lists, which have not been extended by the [Director], shall be automatically cancelled on the specified expiration date."

2

subsequent employment list for Deputy District Attorneys, Basic-Level. According to the County, no employment lists for the basic-level classification were promulgated after the 2008 List, which expired on May 17, 2009.

The County thereafter produced evidence, including a declaration from the Director, Ted Cwiek, stating that he hired Delehunt from the 2008 List based upon a special request by the District Attorney's Office to revive and extend the 2008 List. Specifically, on September 28, 2011, the District Attorney's Office made this request in writing to the Director, explaining that an immediate need had arisen for a basic level deputy district attorney following the retirement of several advanced level deputy district attorneys earlier that year that had caused an experience gap in the Office. The County argued based upon this evidence that it was authorized to grant the District Attorney's special request by PMR 211, which, according to the County, gives the Director discretion to make decisions (including hiring decisions) "based on a rational analysis of the specific circumstances." In this instance, the County argued, the Director could reasonably decide to revive and extend the 2008 List after concluding it was the most expedient way to meet the operational needs of the District Attorney's Office.

On February 27, 2013, the trial court granted appellant's petition in part, ordering the County to "cease and desist from hiring Deputy District Attorneys by means of re-opening and extending previously expired employment lists and adhere to its ministerial duty to follow the hiring procedures set forth in Section 608 of the PMR [governing the duration of employment lists]." In doing so, the trial court found the County lacked "discretion to determine to extend or revive a list beyond the specifically defined parameters." The trial court declined, however, to grant appellant's broader request to order "the County . . . follow its PMRs." A peremptory writ of mandate (writ), consistent with the trial court's order, was thus issued on March 20, 2013. Appellant neither sought nor received any award of damages in conjunction with this writ relief.

On May 24, 2013, appellant moved for an award of attorney fees pursuant to Code of Civil Procedure section 1021.5. Following a contested hearing, the trial court denied this request on November 28, 2013, concluding appellant's writ proceedings had not

3

vindicated an important right affecting the public interest as required by the statute. The trial court reached this conclusion after finding "no evidence of a widespread practice within county employment of the reopening and extending of employment lists in violation of the County's [PMRs]." This appeal of the trial court's ruling followed.

## DISCUSSION

Appellant contends the trial court erred in denying its request pursuant to Code of Civil Procedure section 1021.5 (hereinafter, section 1021.5) for an award attorney fees to cover the financial burden it incurred in obtaining writ relief. Section 1021.5 codifies the private attorney general theory. (*Press v. Lucky Stores, Inc*. (1983) 34 Cal.3d 311, 317-318; *Roybal v. Governing Bd. of Salinas City Elem. School Dist.* (2008) 159 Cal.App.4th 1143, 1147) To recover attorney fees under the statute, the successful party must prove each of the following: (1) its lawsuit has resulted in the enforcement of an important right affecting the public interest; (2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons; and (3) the necessity and financial burden of private enforcement make the award appropriate. (§ 1021.5; *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 933-935 [*Woodland Hills*].)

The trial court, when considering such motion, must " 'utiliz[e] its traditional equitable discretion (now codified in § 1021.5) . . . [to] realistically assess the litigation and determine, from a practical perspective' [citation] whether the statutory criteria have been met [citation]." (*Slayton v. Pomona Unified School Dist*. (1984) 161 Cal.App.3d 538, 545.) " 'On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.' " (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.)

In this case, appellant asks this court to conduct a *de novo* review of the court's order, reasoning that undisputed facts establish each of the criteria for an award of attorney fees under section 1021.5. (See *Connerly v. State Personnel Bd., supra,* 37

4

Cal.4th at p. 1175.) Alternatively, appellant contends that, even were we to review this matter for abuse of discretion, reversal is nonetheless required because the trial court had no reasonable basis for denying its motion. (See *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 7 ["discretion may not be exercised whimsically and, accordingly, reversal is required '*where no reasonable basis* for the action is shown' "].)

The County counters that the normal abuse of discretion standard should govern because the trial court's ruling is essentially a factual one – to wit, that appellant failed to prove the essential requirement under section 1021.5 that its lawsuit vindicated an important right affecting the public interest because there was "no evidence of a wide-spread practice within county employment of the reopening and extending of employment lists in violation of the County's Personnel Management Regulations [PMRs]."

We agree with the County and find appellant's authority, *Connerly v. State Personnel Bd., supra,* 37 Cal.4th 1169, inapposite. There, the California Supreme Court considered the appropriate standard of review where the issue was whether an advocacy group that played a litigation role similar to that of amicus curiae could be assessed attorney fees under section 1021.5 as an "opposing part[y]" within the meaning of the statute. The court recognized that whether a party comes within a particular statutory definition is often a mixed question of law and fact, in which case the normal deferential standard of review would apply so long as factual questions predominate. However, there, the material facts were mostly undisputed and the controversy was a discrete legal question – to wit, "whether a litigant in the California Business Council's somewhat unusual position can be considered an "opposing party." (*Id.* at p. 1175-1176.) Accordingly, the court held that *de novo* review should apply. (*Ibid.*)

Here, we confront no such legal issue. Rather, as the County points out, the trial court's denial of attorney fees arose from its determination that the evidence did not establish that appellant's legal victory vindicated an important right affecting the public interest. Whether the court erred in making this determination does not hinge on

5

statutory interpretation. Rather, it hinges on the state of the evidence. As such, we review the court's decision for abuse of discretion and will not reverse unless "there has been a prejudicial abuse of discretion, i.e., when there has been a manifest miscarriage of justice or 'where no reasonable basis for the action is shown.' " (*Hull v. Rossi* (1993) 13 Cal.App.4th 1763, 1767. See also *Planned Parenthood v. Aakhus* (1993) 14 Cal.App.4th 162, 170 ["Whether a plaintiff has proved each of the three prerequisites for an award of trial fees is a question best decided by the trial court"].)

## I.      Vindication of an Important Public Right.

Thus, turning to the merits of this appeal, we must determine whether the trial court abused its discretion in finding that appellant's writ proceedings did not vindicate an important right affecting the public interest. The trial court reasoned that "there was no evidence of a widespread practice within county employment of the reopening and extending of employment lists in violation of the County's [PMRs]. The evidence showed that one county employer, the District Attorney, was incorrect in believing that the list could be reopened. There was no pattern or practice in the County of such a practice. The result [of the litigation] therefore was simply a finding that current District Attorneys desiring the position that was given to the attorney on the reopened list were entitled to exclusive consideration for the position."

In challenging this decision, appellant claims the trial court misconstrued the issue at stake as being limited to the hiring of a single individual in the District Attorney's Office. Appellant claims the County "admitted" during the writ proceedings having an "established practice" in violation of PMR 608 of extending employment lists at the request of department heads. Based upon this purported admission, appellant contends its legal challenge "implicates the integrity of the entire civil service system, including whether employees can legitimately rely on the system to operate fairly and 'by the book' or whether employment decisions are subject to the whim and whimsy of managers."

As the County notes, however, appellant's petition challenged just one violation of the PMR by the County – to wit, its decision to reopen the 2008 List on a single occasion to hire a single person, Laura Delehunt, as a basic-level deputy district attorney. The

6

petition did not allege any other violation in the District Attorney's Office, much less in another department of County government; nor did appellant seek relief on behalf of any current or prospective County employee other than the particular group that it represented – to wit, the probationary deputy district attorneys eligible for permanent employment.

Further, with respect to appellant's claim that the County admitted having an established practice of reopening expired employment lists, the record simply does not support it. Rather, the record reflects that the County, in its answer to the petition for writ of mandate, "*alleges* that it is the established practice of the Human Resources Director to retroactively extend employment lists upon the request of an appointing authority . . . ." An allegation is not evidence. And the actual evidence submitted by the County in opposing the petition does not prove this allegation. Specifically, a declaration from the Director, Ted Cwiek, the person who reopened the 2008 List, demonstrated that no one but Laura Delehunt was hired from the 2008 List in violation of PMR 608.

In addition, consistent with the request set forth in the petition, the court did not provide relief for any current or prospective County employee besides the probationary deputy district attorneys eligible for permanent employment within the District Attorney's Office (to wit, the employees eligible for the position for which Delehunt was hired). Specifically, the writ of mandate ordered the County to "cease and desist from hiring Deputy District Attorneys by means of re-opening and extending previously expired employment lists and adhere to its ministerial duty to follow the hiring procedures as set forth in Section 608 of the PMR [governing the duration of employment lists]." At the same time, the court declined to include in the writ an order that "the County . . . follow its PMRs."

Given the actual parameters of appellant's litigation, which are grounded in the petition and reflected in the writ itself, we conclude the trial court had a reasonable basis for finding that no vindication of an important public right resulted from this case. Indeed, were we to accept appellant's contrary position, we would, in effect, greatly expand the reach of section 1021.5. Appellant insists, for example, that "[a]s long as the right [at stake] does not involve a matter that is 'trivial' or is based only upon peripheral

7

public policies, it is an important right affecting the public interest.  See *Roybal v. Governing Board of Salinas City Elementary School District* (2008) 159 Cal.App.4th 1143, 1148," hereinafter *Roybal*.  However, the law is not so broad.  "[O]ur Supreme Court has observed that the private attorney general doctrine may be applied to vindicate both constitutional and statutory rights.  (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra*, 23 Cal.3d at p. 935.)  But not all statutory rights are of sufficient importance to be encompassed within section 1021.5.  '[The] statute directs the judiciary to exercise judgment in attempting to ascertain to the 'strength' or 'societal importance' of the right involved.'  (*Ibid.*) In determining the importance of the particular rights vindicated, 'courts should generally realistically assess the significance of that right in terms of its relationship to the achievement of fundamental legislative goals.'  (*Id.*, at p. 936.)"  (*Slayton v. Pomona Unified School Dist., supra,* 161 Cal. App. 3d at p. 547.)  As explained above, that is just what the trial court in this case did:  It realistically assessed the right vindicated by appellant before determining that it did not meet the level of public significance necessary to support a section 1021.5 attorney fee award.  As such, there is no basis on this record to disturb its decision.[4]  (See *Roybal, supra*, 159 Cal.App.4th at p. 1149 [reversing a section 1021.5 fee award where, "At best, it could be inferred that petitioners' victory revealed the deficiencies in the District's layoff procedure *on this occasion*, inasmuch as petitioners' language proficiency was assessed in a way that made it impossible for them to defend themselves.  The remediation of that defect did not amount to enforcement of an important *public* right"].)

---

[4]  Appellant also contends the trial court erroneously applied a "numerosity" requirement with respect to the County's wrongdoing when finding that appellant failed to prove vindication of an important public right based upon the lack of evidence that the County reopened any employment list besides the 2008 List.  We disagree.  Whether there was evidence of the County's widespread violation of PMR 608 was relevant to the trial court's "realistic[] assess[ment]" of appellant's litigation.  (See *Slayton v. Pomona Unified School Dist., supra,* 161 Cal.App.3d at p. 545.)

**II.   Conferring a Significant Benefit on a Large Class of Persons.**

Moreover, even if we were to find there was vindication of an important public right in this case, we would nonetheless conclude appellant failed to meet the second prong of the section 1021.5 standard.  This prong, which in many ways intersects with the first prong, requires a showing that the moving party conferred a significant benefit on the public or a large class of persons.  (*Woodland Hills, supra,* 23 Cal.3d at pp. 939-940.)  Here, appellant argues this prong was met because its action to enforce the PMR conferred the significant benefit of ensuring the County's adherence to consistent, transparent, impartial and nondiscriminatory hiring practices on "tens of thousands" of current and prospective County employees.

The County, in turn, denies that a benefit was conferred on a large class of persons, describing the litigation as involving "the enforcement of a single provision of the PMR as applied to a small group of people."

As an initial matter, while the parties argue over the number of persons beneficially impacted by appellant's success in obtaining writ relief, ultimately both parties appear to acknowledge that the actual number of persons affected is not dispositive.  As appellant points out, in *Plumbers and Steamfitters, Local 290 v. Duncan* (2007) 157 Cal.App.4th 1083 (*Plumbers and Steamfitters, Local 290*), this court upheld a section 1021.5 award to a union consisting of seven plumbers that successfully petitioned to enforce a prevailing wage law.

However, this decision, relied upon by appellant, is distinguishable for other reasons.  In *Plumbers and Steamfitters, Local 290*, the respondent, who was the acting director of the Department of Industrial Relations, had himself designated the policy decision at issue in the litigation as "precedential."  (157 Cal.App.4th at p. 1096.)  In addition, the appellant submitted declarations during the litigation from three people with experience in prevailing wage enforcement who agreed the relevant decision " 'established an important precedent benefitting a large number of employers in the State . . . , dozens of local unions representing their workforce, and many thousands of workers in the construction industry.' "  (*Id*. at pp. 1096-1097.)  In light of the record in

9

that case, our colleagues concluded "substantial evidence supports the trial court's finding that the decision in this case 'is likely to affect other projects and other trades in the future,' " such that a significant public benefit was conferred. (*Id*. at p. 1097.)

Here, appellant has not made a comparable evidentiary showing. As discussed above in our discussion of the "important public right" prong, there is no evidence in this case that the issuance of the writ in favor of appellant is likely to significantly affect the County's future hiring decisions, given that there is no evidence that the County had a pattern or practice of violating its hiring rules apart from the single violation of PMR 608 alleged in the petition. While appellant may be correct that its action has *potential* to deter future PMR violations by the County, including violations affecting County employees outside the District Attorney's Office, this potential deterrent effect is no different or greater than the deterrent effect of any writ proceeding challenging a public entity's failure to comply in a particular instance with a mandatory rule. Had the legislature intended to permit recovery of attorney fees in every case brought by a private entity or individual to compel a public entity's compliance with a particular regulation or rule, we believe the legislature would have drafted section 1021.5 to state as much. However, section 1021.5 does not provide for such broad recovery, and we decline to read it as if did. (See *Woodland Hills, supra*, 23 Cal.3d at p. 939 ["Of course, the public always has a significant interest in seeing that legal strictures are properly enforced and thus, in a real sense, the public always derives a 'benefit' when illegal private or public conduct is rectified. Both the statutory language ('*significant* benefit') and prior case law, however, indicate that the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation"].)

Thus, even assuming appellant is correct that evidence of the size of the population or number of individuals benefited by the lawsuit is not required, and that the substantial benefit conferred under section 1021.5 may be "conceptual or doctrinal" rather than "actual and concrete," the fact remains there must be evidence that "the public is primarily benefited." (*Planned Parenthood v. Aakhus, supra,* 14 Cal.App.4th at p. 171.) In this case, as discussed above, this standard has not been met. Accordingly,

10

we stand by our earlier conclusion that the trial court had discretion to decline to award appellant attorney fees under section 1021.5.[5]

## DISPOSITION

The order denying appellant's motion for attorney fees pursuant to section 1021.5 is affirmed.  The County is entitled to recover costs on appeal.

_____
Jenkins, J.

We concur:

_____
Pollak, Acting P. J.

_____
Siggins, J.

---

[5] Given our conclusion that appellant failed to make the requisite showings under the first and second prongs of the section 1021.5 standard, we need not address whether appellant made the requisite showing under the third prong – to wit, proof that private enforcement of the law was necessary and that the financial burden of undertaking the private enforcement justified the award.  (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214-1215.)  As the case law makes clear, to recover under section 1021.5, a party must meet each of the three prongs.  (See *Galante Vineyards v. Monterey Peninsula Water Management Dist.* (1997) 60 Cal.App.4th 1109, 1127 [" 'Section 1021.5 is intended as a "bounty" for pursuing public interest litigation, not a reward for litigants motivated by their own interests who coincidentally serve the public' "].)

11